IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYCAMORE PARTNERS MANAGEMENT, L.P. (F/K/A SYCAMORE PARTNERS MANAGEMENT, L.L.C.), SYCAMORE PARTNERS, L.P., AND SYCAMORE PARTNERS A, L.P., | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 18-1650 (MN) ) |
| ENDURANCE AMERICAN INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, ZURICH AMERICAN INSURANCE COMPANY, XL SPECIALTY INSURANCE COMPANY, STARR INDEMENITY & LIABILITY COMPANY, MARKEL AMERICAN INSURANCE COMPANY, ARGONAUT INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, IRONSHORE INDEMNITY INC., AND EVEREST NATIONAL INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM OPINION

David J. Baldwin, Carla M. Jones, Tracey E. Timlin, POTTER ANDERSON & CORROON LLP, Wilmington, DE; John E. Failla, Nathan R. Lander, Alyse Stach, PROSKAUER ROSE LLP, New York, NY – Attorneys for Plaintiffs

Barry M. Klayman, COZEN O'CONNOR, Wilmington, DE; Michael R. Davisson, COZEN O'CONNOR, Los Angeles, CA – Attorneys for Defendant Starr Indemnity & Liability Company

Elena C. Norman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael F. Perlis, Cary J. Economou, LOCKE LORD LLP, Los Angeles, CA – Attorneys for Defendant Markel American Insurance Company

July 30, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is Plaintiffs Sycamore Partners Management, L.P. (f/k/a Sycamore Partners Management, L.L.C.), Sycamore Partners, L.P., and Sycamore Partners A, L.P.'s ("Plaintiffs" or "Sycamore") Motion to Remand to Superior Court of Delaware. (D.I. 6). Sycamore moves pursuant to 28 U.S.C. § 1447(c) and/or 28 U.S.C. § 1334 to remand this action to Superior Court. (*Id.*). Defendant Starr Indemnity & Liability Company ("Starr") opposes remand. (D.I. 19). Defendant Markel American Insurance Company ("Markel") joins Starr's opposition.[1] (D.I. 23). For the reasons set forth below, Sycamore's motion will be granted, and this action will be remanded to the Delaware Superior Court.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

Sycamore filed this insurance coverage action in the Delaware Superior Court on September 24, 2018, seeking coverage "for Sycamore's costs in defending against and settling certain claims that were asserted against Sycamore in connection with Sycamore's investment in and transactions involving a portfolio company called Nine West Holdings, Inc." ("Nine West"). (D.I. 7 at 1). On an annual basis, Sycamore "purchases an insurance program that provides broad 'claims-made' protection for claims asserted against" it. (D.I. 1-1 ¶ 27). For the period of December 31, 2016 through June 30, 2018, Sycamore purchased ten insurance policies ("the Sycamore Policies"), amounting to $100 million in total coverage. (*Id.* ¶¶ 27-29). Defendant Endurance American Insurance Company ("Endurance") issued Sycamore's primary insurance

---

[1]  In addition to Starr and Markel, there are eight other defendants in this action: Endurance American Insurance Company, Continental Casualty Company, Zurich American Insurance Company, XL Specialty Insurance Company, Argonaut Insurance Company, Great American Insurance Company, Ironshore Indemnity Inc., and Everest National Insurance Company (collectively, with Starr and Markel, "Insurer Defendants"). These eight defendants have not filed an opposition to Sycamore's motion to remand, nor have they joined in Starr's opposition.

1

policy, "which provide[d] a coverage limit of $10 million in excess of a $500,000 retention borne by Sycamore." (*Id.* ¶ 28). The nine other Insurer Defendants "each issued a $10 million excess insurance policy that 'follows-form' to the primary policy" issued by Endurance to meet the $100 million coverage amount.[2] (D.I. 7 at 4 (citing D.I. 1-1 ¶¶ 28-30)).

In August 2017, Sycamore received a demand letter from "certain creditors of Nine West, alleging that Sycamore had engaged in various wrongful acts in connection with its investment in and transactions involving Nine West and caused damages to Nine West and its creditors as a result." (D.I. 1-1 ¶ 41). Following the initial demand letter, Nine West's creditors asserted additional claims against Sycamore, "which demanded that Sycamore pay settlement funds to compensate for the alleged damages cause by Sycamore . . . to Nine West and its creditors." (*Id.* ¶ 42). On April 6, 2018, Nine West filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. (*Id.* ¶ 43). Following the filing of the bankruptcy petition, "the Nine West bankruptcy estate . . . became empowered to pursue all Claims against Sycamore . . . and to negotiate potential settlements of the Nine West Claims with Sycamore." (*Id.*). In September 2018, Sycamore received an additional demand letter from the creditors of Nine West, alleging various "breaches of fiduciary duties and aiding and abetting of breaches of fiduciary duties." (*Id.* ¶ 44). In defending itself against the claims asserted by Nine West and its creditors, Sycamore alleges that it has incurred substantial expenses, which it asserts are covered by the Sycamore Policies. (*Id.* ¶¶ 45).

On September 24, 2018, Sycamore filed suit in Delaware's Superior Court, asserting three claims against the Insurer Defendants: (1) alleging that Endurance breached its contractual

---

[2]    Details regarding the Sycamore Policies, such as the layer of each policy, the issuer of each policy, and coverage limits of each policy are found at D.I. 1-1 ¶ 29.

obligations by failing to pay Sycamore for expenses incurred in defending itself against Nine West's claims; (2) seeking a declaratory judgment that the Insurer Defendants were required to pay for expenses incurred by Sycamore in defending itself against Nine West's claims; and (3) seeking a declaratory judgement that the Insurer Defendants were required to "provide coverage to [Sycamore] for any settlement of the Nine West Claims" (collectively, "Insurance Coverage Claims"). (D.I. 7 at 6). On October 17, 2018, Sycamore "reached an agreement, subject to the approval of the Bankruptcy Court, to compromise, settle and resolve the Nine West Claims, for a payment by Sycamore of no less than $96,000,000." (*Id.*). On October 23, 2018, Starr filed a Notice of Removal, removing this action from Superior Court to this Court. (D.I. 1). In its notice, Starr asserted that this Court "has original jurisdiction over the instant civil action pursuant to 28 U.S.C. § 1334(b), which provides that the United States district courts shall have jurisdiction over all civil proceeding 'related to cases under title 11 [the United States Bankruptcy Code].'" (*Id.* ¶ 4 (alteration in original)).

On November 2, 2018, Sycamore filed the instant motion to remand this action to Superior Court. (D.I. 6). Shortly thereafter, on November 20, 2018, Starr filed a motion to transfer this case to the Southern District of New York[3] (D.I. 16), which Sycamore has opposed (D.I. 26). On November 30, 2018, Starr filed an opposition to Sycamore's motion to remand (D.I. 19), which Markel later joined (D.I. 23). Briefing on the instant motion was completed on December 14, 2018. (D.I. 25). On February 27, 2019, the United States Bankruptcy Court for the Southern District of New York entered an order confirming Nine West's Chapter 11 Plan. *See generally*

---

[3] Because the Court will grant Sycamore's motion to remand, Starr's motion to transfer (D.I. 16) is denied as moot.

*In re Nine West Holdings, Inc. et al.*, Case No. 1:2018-bk-10947, D.I. 1308 (Bankr. S.D.N.Y. Feb. 27, 2019). The plan went into effect on March 20, 2019. *See id.*, D.I. 1369.

## II.   DISCUSSION

Sycamore argues that the Court should remand this action to Superior Court because the Court does not have "related to" jurisdiction over its Insurance Coverage Claims, and even if it did, the doctrine of mandatory abstention under 28 U.S.C. § 1334(c)(2) requires the Court to abstain from hearing the case.[4] (D.I. 7 at 2). As discussed below, the Court agrees with Sycamore. Starr has not met its burden to establish that "related to" jurisdiction exists over Sycamore's Insurance Coverage Claims, and even if it had, the Court would abstain from hearing the case under 28 U.S.C. § 1334(c)(2).

### A.   The Court Does Not Have "Related To" Subject Matter Jurisdiction Over Sycamore's Insurance Coverage Claims

"[F]ederal courts are courts of limited jurisdiction and have authority to act only where a statute confers it." *Kaufman v. Liberty Mut. Ins. Co.*, 245 F.2d 918, 919 (3d Cir. 1957); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441(a). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941); *see also Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). A court will remand a removed case "if at anytime before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "[T]he party

---

[4]   Sycamore also contends that, in the event that "related to" jurisdiction exists, the Court should exercise its discretion and abstain from hearing the case under 28 U.S.C. § 1334(c)(1). (D.I. 7 at 13). Because Starr has not met its burden to show that "related to" jurisdiction exists and, even if it did, the Court would be required to abstain from hearing the case under 28 U.S.C. § 1334(c)(2), the Court need not reach the question of whether it should exercise its discretion and abstain from hearing the case.

4

asserting federal jurisdiction in a removal case bears the burden of showing . . . that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel–Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)). Here, Starr asserts that subject matter jurisdiction exists over Sycamore's Insurance Coverage Claims under the "related to" prong of 28 U.S.C. § 1334(b). (D.I. 1 ¶ 4). Section 1334 provides, in pertinent part, that ". . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). With respect to "related to" jurisdiction, the Third Circuit has adopted an "any conceivable effect" test, stating:

> "[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).

"Nonetheless, a [district] court's 'related to' jurisdiction 'cannot be limitless.'" *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). "The Supreme Court has explained that the critical component of the *Pacor* test is that '[district] courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.'" *Id.* (quoting *Celotex*, 514 U.S. at 308 n.6). In disputes between non-debtors, the Third Circuit has noted that "jurisdiction will not extend to a dispute between non-debtors unless the dispute creates 'the logical possibility that the estate will be affected.'" *Id.* at 165 (quoting

5

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 380 (3d Cir. 2002), *cert. denied*, 537 U.S. 1148 (2003)).

As an initial matter, the Court notes that this action was filed prior to the confirmation of Nine West's Chapter 11 Plan. Typically, "once a [bankruptcy] plan has been confirmed, the court's jurisdiction begins to weaken." *In re H & L Developers, Inc.*, 178 B.R. 71, 76 (Bankr. E.D. Pa. 1994) (quotation marks and citation omitted); *see also Resorts, Int'l*, 372 F.3d at 165 ("[T]hough the scope of bankruptcy court jurisdiction diminishes with plan confirmation, bankruptcy court jurisdiction does not disappear entirely."). Subject matter jurisdiction, however, "is based on the state of facts that existed at the time an action is filed." *In re SemCrude, L.P.*, 428 B.R. 82, 96 (Bankr. D. Del. 2010). Thus, the Court will address whether "related to" jurisdiction existed at the time of this action's filing, prior to the confirmation of Nine West's plan. *Id.* at 98 ("[T]he Court will apply the *Pacor* test to the facts as they stood at the time the Tender Adversaries were filed."); *see also Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 336 (5th Cir. 2008) ("[Plaintiff] cannot point to a single case in which we have held that a plan confirmation divests a District Court of bankruptcy jurisdiction over pre-confirmation claims based on pre-confirmation activities that properly had been removed pursuant to 'related-to' jurisdiction. We likewise find none.").

Here, Starr asserts that "related to" subject matter jurisdiction exists because Nine West "needs the settlement monies from Sycamore to successfully reorganize." (D.I. 19 at 9). Starr contends that the fact "[t]hat Sycamore has tentatively settled the debtor's claims against it, and simultaneously seeks to recover those same funds from its insurers, is a sufficient nexus to establish 'related to' jurisdiction." (*Id.* at 9-10). In response, Sycamore asserts that "the amount of money that Sycamore will ultimately pay to the Nine West bankruptcy estate is not contingent upon the

6

outcome of this coverage litigation." (D.I. 25 at 1 (emphasis omitted)). Thus, because the resolution of this litigation will not "increase or decrease" the estate, Sycamore argues that "related to" jurisdiction does not exist. (*Id.* at 2).

The Court agrees with Sycamore. Although "related to" jurisdiction is applied broadly, it is not "limitless." *Resorts Int'l*, 372 F.3d at 164. Thus, for this Court to have "related to" jurisdiction over Sycamore's Insurance Coverage Claims, there must be a "logical possibility that the estate will be affected." *See id.* at 165 (quotation marks and citation omitted). There has been no showing of such a possibility here. For example, there is no indication that the size of Nine West's bankruptcy estate could increase or decrease based on the resolution of this action. *See Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753 (E.D. Pa. 2003) (finding that "related to jurisdiction" did not exist because "the resolution of this lawsuit will not increase or decrease the size of [the debtor's] bankruptcy estate"); *see also Am. Chem. Serv. Site. RD/RA Agreement Members v. Admiral Ins. Co.*, 396 B.R. 14, 18 (S.D. Ind. 2008) (finding there was no "related to" jurisdiction in an insurance coverage action where the outcome of the lawsuit "would not affect the amount of property in the [debtor's] bankruptcy estate"). Sycamore asserts, and Starr does not dispute, that the settlement between Sycamore and the Nine West bankruptcy estate is not contingent on the resolution of this action. (*See* D.I. 7 at 9; *see also* D.I. 19 (calling Sycamore's contingency argument a "red herring" but not disputing that Sycamore's settlement with Nine West is not contingent on the instant lawsuit)).

Starr's reliance on *Celotex* is unavailing. (D.I. 19 at 8-10). In *Celotex*, the Supreme Court found that the bankruptcy court had "related to" jurisdiction over a dispute related to a bond that was secured by the proceeds of a settlement between the debtor and its own insurer. 514 U.S. at 310. The Supreme Court determined that execution of the bond "would have a direct and

7

substantial adverse effect on [the debtor's] ability to undergo a successful reorganization," given that the bond's execution would have eliminated the debtor's rights to the proceeds of its insurance policies and reduced the amount of property in the bankruptcy estate. *Id.* at 309-10. Here, there is not the same kind of "direct and substantial adverse effect" on the Nine West bankruptcy estate that would occur following the resolution of this litigation. As noted above, Sycamore's settlement with the Nine West bankruptcy estate is not contingent on the resolution of this lawsuit. Thus, a finding that the Insurer Defendants are not required under the Sycamore Policies to provide coverage to Sycamore in relation to its claims with Nine West will not affect the Nine West bankruptcy estate any more than a finding that the Insurer Defendants are required to provide coverage. Therefore, Starr has failed to establish that "related to" subject matter jurisdiction exists over Sycamore's Insurance Coverage Claims.

> **B.** **Even If Subject Matter Jurisdiction Over Sycamore's Insurance Coverage Claims Existed, the Court Would Be Required to Abstain from Hearing Those Claims Under 28 U.S.C. § 1334(c)(2)**

Sycamore argues that, even if "related to" subject matter jurisdiction exists, the Court must abstain from hearing this action pursuant to 28 U.S.C. § 1334(c)(2). (D.I. 7 at 10). The Court agrees. Section 1334(c)(2) provides,

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, a district court must abstain from exercising "related to" subject matter jurisdiction where the following requirements are met:

8

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related" to a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11[;] (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006). In cases where the action has been removed from state court and 28 U.S.C. § 1334(c)(2) requires the court to abstain from hearing it, a district court may remand the action to the state court from which it was removed. *See, e.g.*, *In re General Wireless Operations Inc.*, No. 17-10506 (BLS), 2017 WL 6033562, at *1 (Bankr. D. Del. Dec. 1, 2017) (remanding case to state court after finding mandatory abstention applied); *In re Maxus Energy Corp.*, 560 B.R. 111, 114 (Bankr. D. Del. 2016) (same).

Here, the parties do not dispute that: (1) Sycamore's motion is timely; (2) Sycamore's Insurance Coverage Claims are based on state law;[5] (3) Sycamore's Insurance Coverage Claims do not arise under Title 11 or arise in a case under Title 11; and (4) the sole basis for subject matter jurisdiction in this Court is "related to" jurisdiction. (*See* D.I. 7 at 11-12; D.I. 19 at 12). Thus, the parties dispute only whether the fourth and fifth requirements are met, specifically: whether Sycamore "commenced" an action in state court and whether Delaware's Superior Court is a court of "appropriate jurisdiction" under the fourth factor and whether Delaware's Superior Court can "timely adjudicate" the parties' dispute under the fifth. (*See* D.I. 19 at 12-16; D.I. 25 at 3). For

---

[5] Although the parties agree that this action is based on state law, they disagree about which state's law applies – Sycamore contends that Delaware law applies (D.I. 7 at 15), whereas Starr contends that New York law applies (D.I. 19 at 12). The parties' dispute, however, over which state's law governs this action does not change the fact that this "proceeding is based on a state law claim or cause of action." *Stoe*, 436 F.3d at 213. Thus, the first requirement of mandatory abstention is met.

9

the reasons discussed below, the Court finds that the fourth and fifth requirements of mandatory abstention have been met.

### 1. Sycamore "Commenced" an Action in State Court

The crux of the parties' dispute is whether Sycamore's state court action must have been initiated prior to the filing of the bankruptcy petition to satisfy the requirement of "commencing" an action in state court. (*See* D.I. 19 at 12; D.I. 25 at 3). Starr contends that this requirement has not been met because "Sycamore cannot establish that the state court action was commenced prior to the filing of the bankruptcy case," given that Nine West filed for bankruptcy in April 2018 and Sycamore filed its state court action in September 2018. (D.I. 19 at 12). In response, Sycamore contends that "[t]his argument is contrary to the plain language of 28 U.S.C. § 1334(c)(2) and controlling Third Circuit authority." (D.I. 25 at 3).

As an initial matter, the Court is not aware of, nor have the parties cited any, controlling Third Circuit case law, or case law from any other circuit court, that directly addresses this issue. Sycamore relies on *Stoe*. The question of whether a state court action must be initiated prior to the filing of the bankruptcy petition, however, was not before that court. Rather, the *Stoe* court focused on whether mandatory abstention applies to removed cases. 436 F.3d at 216. Nonetheless, Sycamore asserts that *Stoe* is binding precedent for the proposition that mandatory abstention applies to cases where the state court action postdates the bankruptcy petition because the court was "well aware that it was ordering remand on mandatory abstention grounds of an action that had been filed post-petition." (D.I. 25 at 4-5 (citing *Stoe*, 436 F.3d at 211-12)). In response, Starr contends that this "is an incorrect reading of *Stoe* as it is clear that the parties in that case did not raise the issue" (D.I. 19 at 14 n.9) and instead asks that the Court follow cases that have required

the state court action to be filed prior to the bankruptcy petition for mandatory abstention to apply (*id.* at 12 (citing cases)).

The Court agrees with Sycamore and the courts that have found that initiation of the state action before the filing of the bankruptcy petition is unnecessary to satisfy this requirement. *See, e.g.*, *Woody Partners v. Maguire*, No. 19-18, 2019 WL 2521355, at *4 (W.D. Pa. June 19, 2019) (agreeing that the timing of the state court action "in relation to the filing of the petition is irrelevant"); *Reynolds v. Behrman Capital IV L.P.*, 592 B.R. 892, 903 (N.D. Ala. 2018) (finding that mandatory abstention applies in cases which the state action postdates the bankruptcy petition); *General Wireless*, 2017 WL 6033562, at *4 (same); *In re Danley*, 552 B.R. 871, 887 n.13 (Bankr. M.D. Ala. 2016) (same). In particular, the Court is persuaded by the *General Wireless* case, a decision by a court in this district. *See* 2017 WL 6033562, at *4. In *General Wireless*, the court, in reviewing *Stoe*, determined that although the *Stoe* court did not directly address the issue, "[t]he Third Circuit, however, implicitly held that post-petition commencement is sufficient by approving mandatory abstention in a factual scenario involving a state court action filed post-petition."[6] *Id.* The Court agrees that *Stoe* permits a conclusion that post-petition state actions can satisfy this requirement.

Moreover, the Court is persuaded by the courts that have refused to read limitations into § 1334(c)(2) that are not apparent from a plain reading of the statute. For example, in *Danley*, the court refused to read the "is commenced" language as requiring that the state court action be

---

[6] The Court also notes that, in coming to that conclusion, the *General Wireless* court reviewed its previous decision, *In re: Longview Power, LLC*, 516 B.R. 282 (Bankr. D. Del. 2014), in which the court "relied on a substantial body of **non-binding** precedent [to] hold[] that only a pre-petition suit met the 'is commenced' prong." 2017 WL 6033562, at *4 (citing 516 B.R. at 295) (emphasis added). In considering *Longview* and *Stoe*, the *General Wireless* court "conclude[d] that *Longview* and *Stoe* are neither distinguishable nor reconcilable. *Longview* must of course yield to *Stoe*." *Id.*

11

commenced prior to the bankruptcy petition. 552 B.R. at 887 n.13 ("The 'is commenced' language requires that a state court action has been commenced, nothing more. Mandatory abstention can apply even if the state court case post-dated the bankruptcy."); *cf. Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000) (declining to read a removal exception into the "is commenced" language of 28 U.S.C. § 1334(c)(2)); *In re Midgard Corp.*, 204 B.R. 764, 778 n.16 (B.A.P. 10th Cir. 1997) (refusing to read in a limitation that the state court action be "commenced and pending" because "[t]his interpretation of section 1334(c)(2) reads a requirement into the statute which plainly does not exist"). Thus, because Sycamore initiated an action in state court, this requirement is satisfied, regardless of when the state court action was filed.

### 2. The Delaware Superior Court Is a Court of "Appropriate Jurisdiction"

Starr contends this requirement has not been met because "[w]hile Starr does not dispute that the Delaware courts have jurisdiction over Starr, it is also true that New York courts would have jurisdiction, and that New York federal court would be a more appropriate forum to adjudicate this dispute." (D.I. 19 at 15). To support its assertion, Starr argues that New York is a more appropriate forum because, among other reasons, the negotiations regarding the Sycamore Policies occurred in New York, each of the Insurer Defendants have offices in New York, and Nine West filed for bankruptcy in New York. (*Id.* at 15-16). In response, Sycamore contends that this factor does not require that the forum be the "most appropriate" forum. (D.I. 25 at 5-7). Rather, a court needs only jurisdiction to be a "court of 'appropriate jurisdiction.'" (*Id.* at 7).

The Court agrees with Sycamore. As Sycamore points out in its reply brief, Starr fails to cite any case law in support of its position that a court of "appropriate jurisdiction" must be the "most appropriate" forum for an action. (*Id.* at 5). In fact, Starr's position has been routinely rejected by courts that have considered it. *See, e.g.*, *Hill v. Re*, 574 B.R. 322, 334 (N.D. Ga. 2017)

("A state court of 'appropriate jurisdiction' is one that actually has jurisdiction to hear the matter at hand, as opposed to the state court that is 'most appropriate' in terms of venue."); *In re Mattson*, 448 B.R. 540, 548 (Bankr. D. Kan. 2011) ("Although [Defendant] may be able to argue that the Jackson County Circuit Court is not the most convenient forum to hear this action, or even that the Jackson County Circuit Court is not the most appropriate court where [Plaintiff] could have filed this case, it cannot seriously argue that the Jackson County Circuit Court is not 'a state forum of appropriate jurisdiction.'"); *Reunion Indus., Inc. v. Steel Partners II, L.P.*, 410 B.R. 170, 176 (W.D. Pa. 2008) (finding a forum selection clause designating New York did not mean that a Pennsylvania court was not a court of "appropriate jurisdiction"); *In re Terry Mfg. Co.*, 324 B.R. 147, 153 (Bankr. M.D. Ala. 2005) (holding that "appropriate jurisdiction" means that "the state court in question has jurisdiction to hear the matter at hand" and rejecting the proposition that "appropriate jurisdiction" means the "most appropriate jurisdiction").

Like the other courts that have considered this issue, this Court rejects the proposition that "appropriate jurisdiction" means the "most appropriate" or "best" available forum to hear the case. Interpreting "appropriate jurisdiction" to mean "most appropriate" or "best" requires the term to encompass both jurisdiction and venue, an interpretation that is inconsistent with a plain reading of the statute. *See* 28 U.S.C. § 1334(c)(2); *see also In re Terry Mfg.*, 324 B.R. at 153 ("Had Congress meant venue, one presumes that it would have said so."). Moreover, that interpretation "would appear to duplicate, or perhaps supersede, existing law on change of venue and *forum non conveniens*." *In re Terry Mfg.*, 324 B.R. at 153. Thus, given that Starr concedes that the Delaware

13

courts have jurisdiction over it,[7] the Court finds that Superior Court is a court of "appropriate jurisdiction."

### 3. Delaware's Superior Court Can "Timely Adjudicate" Sycamore's Insurance Claims

"When assessing 'timely adjudication' in this context, '[t]he question is not whether the action would be *more quickly* adjudicated in the bankruptcy court than in state court, but rather, whether the action can be *timely adjudicated* in the state court.'" *In re G-I Holdings, Inc.*, 564 B.R. 217, 248 (Bankr. D.N.J. 2016) (alteration and emphasis in original) (quoting *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008)). Courts have considered the following factors in "assessing the timeliness issue: (1) backlog of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Id.* (citing *In re Carriage House Commc'n*, 415 B.R. 133, 145 (Bankr. E.D. Pa. 2009)).

Here, Starr contends that Superior Court will be unable to adjudicate the parties' dispute in a timely manner, citing a variety of reasons. First, Starr asserts that Superior Court is "backlogged as demonstrated by the fact that it has approximately 4,000 more civil case filings than" the district court. (D.I. 19 at 15). Although this factor is not meant to be a straight comparison of the respective case loads of the state court and federal court, Starr's argument seems to be based on a misreading of each court's caseload statistics. In 2018, 4,690 civil complaints were filed in Superior Court. *See* Administrative Office of the Delaware Courts, *2018 Statistical Information for the Delaware Superior Court – Civil Caseload Breakdown*, https://courts.delaware.gov/aoc/annualreports/fy18/doc/SuperiorCivilCaseloadBreakdown.pdf.

---

7      None of the Insurer Defendants has challenged jurisdiction in this Court or the Delaware Superior Court.

(last visited July 29, 2019). In comparison, 2,148 civil cases were filed in the District of Delaware in 2018. *See* Administrative Office of the United States Courts, *Table C-3-U.S. District Courts– Civil Cases Commenced, By Nature Of Suit And District, During The 12-Month Period Ending December 31, 2018*, https://www.uscourts.gov/statistics/table/c-3/statistical-tables-federal-judiciary/2018/12/31 (last visited July 29, 2019). Thus, although more civil cases were filed in Superior Court than the District of Delaware, there were not "4,000 more civil case filings." Moreover, Starr's assertion does not consider that Superior Court has 21 judges – more than five times the number that this Court has. Thus, although Superior Court is busy, it is no busier than the District of Delaware.

Starr's assertion also fails to consider that this action was filed in Superior Court's Complex Commercial Litigation Division ("CCLD"), which was established to meet the needs of the litigants who wished for efficient resolution of complex business disputes. Joseph R. Slights III & Elizabeth A. Powers, *Delaware Courts Continue to Excel in Business Litigation with the Success of the Complex Commercial Litigation Division of the Superior Court,* 70 BUS. LAW. 1039, 1040 (2015). For example, "if the parties have a need to resolve their dispute quickly, the CCLD judges will accommodate this need with a scheduling order that provides for expedited discovery and a prompt trial date." *Id.* at 1053-54. Moreover, CCLD cases are given priority among the assigned judge's other trial assignments. *See* Delaware Courts, *Complex Commercial Litigation Division (CCLD),* http://courts.delaware.gov/superior/complex.aspx (last visited July 29, 2019). Thus, the Court is confident that, despite the busy docket of Superior Court, the case can be adjudicated in a timely manner. *General Wireless*, 2017 WL 6033562, at *2 n.2 ("The Court is confident this matter could be timely adjudicated in the Superior Court[.]").

Second, Starr asserts that "the bankruptcy proceeding has commenced and is proceeding faster than this action." (D.I. 19 at 15). Although Starr may be correct, given that Nine West's Chapter 11 Plan took effect on March 20, 2019 while this action still remains at an early stage, its assertion is not compelling. In its Notice of Removal, Starr stated that it would not consent to any orders or judgments entered by a bankruptcy court and it has not sought to have this action decided alongside the Nine West bankruptcy. (D.I. 1 ¶ 9). Moreover, given that Nine West's Chapter 11 Plan is in effect, the difference in speed at which the bankruptcy is proceeding versus the speed at which this action is proceeding now seems to be moot.

Third, Starr contends that the "coverage issues here – while straightforward to insurance practitioners – may be relatively complex to the uninitiated." (D.I. 19 at 15). Starr, however, fails to explain why this Court would be better equipped to handle the issues than Superior Court, especially given that the case was filed in the Complex Commercial Litigation Division. Fourth, Starr asserts, "assuming that Sycamore will use insurance proceeds to fund the settlement, the state court proceeding might prolong the administration of the estate." (D.I. 19 at 15). Starr provides no basis for this assertion, nor does it explain why proceeding in Superior Court as compared to this Court would prolong the administration of the Nine West estate. Thus, the Court does not see why this action could not be adjudicated in a timely manner in Superior Court.

Accordingly, the Court finds that the fourth and fifth requirements of mandatory abstention have been met. Even if the Court had "related to" jurisdiction over Sycamore's Insurance Coverage Claims, the Court would be required to abstain from hearing the claims under 28 U.S.C. § 1334(c)(2).

## III. CONCLUSION

For the foregoing reasons, the Court grants Sycamore's motion to remand. An appropriate order will issue.